IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RAY BROWN AND ASSOCIATES, INC., a Nebraska Corporation,<br><br>Plaintiff,<br><br>v.<br><br>HOT SPRINGS SENIOR PROPERTIES, LLC, a South Dakota Limited Liability Company; PINE HILLS, INC., a South Dakota Corporation; STEVEN H. WYATT, an individual; KELVIN LORENZ, an individual; and DALE BOEHNER, an individual,<br><br>Defendants, Counterclaimants and Third-Party Plaintiffs,<br><br>v.<br><br>RAY BROWN, RICHARD J. STACY, MILLER & ASSOCIATES CONSULTING ENGINEERS, P.C., a Nebraska Professional Corporation, RICHARD M. NOEL, and NOEL ENGINEERING, INC., a Nebraska Corporation,<br><br>Third-Party Defendants. | CASE NO. 8:07CV159<br><br><br><br><br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Motion for Summary Judgment submitted by Third-Party Defendants Richard M. Noel and Noel Engineering, Inc. (collectively, "the Noels") (Filing No. 82). For the reasons stated below, the motion will be granted.

**PROCEDURAL BACKGROUND**

On March 27, 2007, Plaintiff Ray Brown and Associates, Inc. ("RBA"), brought this action in the District Court of Custer County, Nebraska, against Hot Springs Senior Properties ("Hot Springs"), alleging, *inter alia*, that Hot Springs failed to pay RBA for

consulting and development services related to the construction of an assisted-living and long-term-care facility in South Dakota. (Complaint, Filing No. 6-2; and Amended Complaint, Filing No. 97, adding parties and claims). Hot Springs removed the action to this Court and, on June 1, 2007, filed its Answer as well as numerous counter-claims against RBA, and numerous third-party complaints. (Answer, Counterclaim and Third-Party Complaint, Filing No. 9).

One of the third-party complaints claimed that engineer Richard M. Noel was negligent in providing engineering services to RBA for the benefit of Hot Springs, and that Noel Engineering, Inc., was also liable for such negligent acts through the principle of respondeat superior. (*Id.*, pp. 8-14; Amended Counterclaim and Third-Party Complaint, Filing No. 96, pp. 10-16). The Noels moved for summary judgment, asserting that Hot Springs' claims against them are barred by Nebraska's statute of limitations for professional negligence. (Filing No. 82). The parties have submitted briefs (Filing Nos. 84, 105, 110) and indexes of evidence (Filing Nos. 83, 85, 106, 107, 109, 115) in support of their respective positions.

**FACTS**

The following facts, relevant to the pending motion, are undisputed. Richard Noel is a registered engineer, living in Lincoln, Nebraska, and at all relevant times was employed by Noel Engineering. (Amended Counterclaim and Third Party Complaint, Filing No. 96, ¶¶ 50, 66; Answer to Amended Third-Party Complaint, Filing No. 99, ¶¶ 4, 13). Noel Engineering is a corporation licensed and conducting business in Nebraska with its principal office in Lincoln. (Filing No. 96, ¶ 51; Filing No. 99, ¶ 4). Richard Noel and Noel Engineering are professionals as that term is defined in Neb. Rev. Stat. § 25-222. (Filing

2

No. 96, ¶ 67; Filing No. 99, ¶ 13). At some time on or before April 16, 2005, RBA hired Noel Engineering to provide certain services in connection with the assisted-living and long-term-care facility in South Dakota (the "Project"). (Filing No. 96, ¶ 68; Filing No. 99, ¶ 14; Noels' Brief in Support of Motion for Summary Judgment, Filing No. 84, p. 9; Hot Springs' Brief in Opposition to Motion for Summary Judgment, Filing No. 105, p. 3). RBA considered the Noels' work complete on April 16, 2005. (Filing No. 85-4, Deposition of Gene Uden, owner and President of RBA, 152:20 to 153:4). Noel Engineering was paid for its work in May 2005. (Filing No. 84, p. 9; Filing No. 105, p. 6). At least as early as March 4, 2006, Hot Springs was aware of problems with the electrical aspects of the Project, including plans and specifications. (*Id.*).

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

## DISCUSSION

Hot Springs and the Noels agree that the applicable statute of limitations is set forth in Neb. Rev. Stat. § 25-222 (Reissue 1995) which provides:

> Any action to recover damages based on alleged professional negligence or upon alleged breach of warranty in rendering or failure to render professional services shall be commenced within two years next after the alleged act or omission in rendering or failure to render professional services providing the basis for such action; *Provided*, if the cause of action is not discovered and could not be reasonably discovered within such two-year period, then the action may be commenced within one year from the date of such discovery or from the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier; *and provided further*, that in no event may any action be commenced to recover damages from professional negligence

4

or breach of warranty in rendering or failure to render professional services more than ten years after the date of rendering or failure to render such professional service which provides the basis for the cause of action.

"Under the terms of § 25-222, if an action is not to be considered time barred, the plaintiff must either file within 2 years of an alleged act or omission or show that its action falls within the exceptions of this section as to its discovery of the defendant's alleged negligence." *Lindsay Mfg. Co. v. Universal Surety Co.*, 519 N.W.2d 530, 538 (Neb. 1994).

Hot Springs' third-party complaint against the Noels does not allege any specific act or omission on the Noels' part. It simply alleges that the services the Noels provided to RBA in connection with design, development and construction of the Project "were below the standard for engineers" and that "Richard M. Noel's engineering services were below the applicable standards of care and constitute negligence," which "was a cause of Hot Springs' . . . damages." (Filing No. 96, ¶¶ 68-69, 84-86).

Neither does Hot Springs allege, nor could it allege under the facts of this case, that it did not or could not discover its cause of action until more than two years after the Noels' alleged negligence. Instead, Hot Springs contends that the Noels had a "continuing

5

relationship" *with RBA* such as to toll Hot Springs' two-year limitations period.[1]  (See Hot Springs' brief, Filing No. 105, p. 3, 9-12).

The Nebraska Supreme Court has recognized a "continuous representation rule," when the *defendant* in a professional negligence action maintained a continuous relationship with the *plaintiff* for the same or related subject matter after the alleged professional negligence.  For example the Nebraska Supreme Court held that the "'two-year statute of limitations under § 25-222, applicable to an architect who has the responsibility to design a building and a duty to inspect throughout construction, begins to run when the construction is completed.'" *Lindsay Mfg. Co. v. Universal Surety Co.*, 519 N.W.2d at 538,  quoting *Board of Regents v. Wilscam Mullins Birge,* 433 N.W.2d 478, 483 (Neb. 1988).  "This rule is commonly referred to as the 'continuous representation' rule." *Id.*

Underlying the "continuous representation" rule is an assumption of a contractual relationship between the *plaintiff* and the *defendant*.  "Before reaching a factual determination of when the relationship between [the defendant] and [the plaintiff] ended,

---

[1] Hot Springs notes language in a letter dated April 16, 2005, from Richard Noel to RBA, which states: "Noel Engineering will be notified of appropriate times, and will be re-inbursed [sic] for our time spent on several field observations as the work progresses." (Filing No. 83, Ex. 1).  Hot Springs also notes that Richard Noel wrote a letter to Uden on June 28, 2005, identifying certain electrical specifications for the Project (Filing No. 115, Ex. B); that Noel received a letter dated July 27, 2005, from South Dakota Medical facilities engineer Rick Schuman, underlined portions of the letter relevant to the Project, and consulted with the Project architect, Richard Stacy (*id.* at Ex. C); that Noel received another letter from Schuman within a few days of October 25, 2005, and again underlined portions of the letter (*id.* at Ex. D) and called Stacy to express concern; and that Noel continued to be copied on letters from Schuman in December 2005 (*id.* at Ex. E and F).  There is no allegation that any such correspondence constituted an act or omission giving rise to Hot Springs' claim against the Noels, however, nor can this Court draw any such inference from its review of that correspondence.

6

we must first establish whether the contractual relationship between the parties was sufficient to create a continuous relationship that would toll the statute.  In order for a continuous relationship to toll the statute of limitations regarding a claim for malpractice, there must be a continuity of the relationship and services for the same or related subject matter after the alleged professional negligence."  *Reinke Mfg. Co., Inc. v. Hayes*, 590 N.W.2d 380, 391 (Neb. 1999).[2]

Every case on which Hot Springs relies, to demonstrate the tolling of the statute of limitations under its "continuous representation" theory, concerned a contractual relationship between the *plaintiff* and the *defendant*.  In *Lincoln Grain, Inc. v. Coopers & Lybrand*, 338 N.W.2d 594 (Neb. 1983), the defendant rendered services for the plaintiff under the terms of an engagement letter for each audit.  *Id.* at 597.  Similarly, in *McCook Equity Exchange v. Cooperative Service Co.*, 433 N.W.2d 509 (Neb. 1988), audits performed by the defendant at the plaintiff's request – contractual arrangements –  were found to be separate and distinct transactions.  In *Zion Wheel Baptist Church v. Herzog*, 543 N.W.2d 445 (Neb. 1996), the plaintiff sued an attorney it had retained in connection with the purchase of real estate; again, a contractual arrangement between the plaintiff and defendant.  This Court's own research has yielded no Nebraska Supreme Court cases in which the "continuous representation" rule was applied to toll the statute of limitations in an action against a defendant when the plaintiff maintained a contractual relationship and "continuous representation" with a third party, not the defendant.

---

[2]In *Reinke,* the manufacturer of an irrigation system sued the engineer it had hired to design the system.  The Nebraska Supreme Court found that the contract between the plaintiff and defendant was not sufficient to establish a continuous relationship throughout the resolution of major problems with the system.  590 N.W.2d at 391.

Hot Springs does not allege that it had any contractual relationship with the Noels, nor does it appear that it could make such an allegation under the facts of the case. This Court finds no basis to conclude that the Noels' alleged "continuing relationship" with RBA should toll Hot Springs' statute of limitations against the Noels.

## CONCLUSION

Hot Springs' third party complaint against the Noels was not filed within two years of any negligent act or omission allegedly committed by Noels; nor was it filed within one year of Hot Springs' discovery of its alleged injury; nor was Hot Springs' statute of limitations tolled under Nebraska's "continuous representation" rule.

Accordingly,

IT IS ORDERED:

1. The Motion for Summary Judgment of Third Party Defendants Richard M. Noel and Noel Engineering, Inc., a Nebraska Corporation (Filing No. 82) is granted; and

2. Third Party Plaintiff Hot Springs Senior Properties, L.L.C.'s Third Party Complaint against Richard M. Noel and Noel Engineering is dismissed, with prejudice.

DATED this 28th day of January, 2008.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge